Patrick **FORENESS,** Director, Postal Data Center, and United States Postal Service, et al., Appellants,

v.

Maury **HEXAMER,** Appellee.

No. 05–95–01162–CV.

Court of Appeals of Texas, Dallas.

Oct. 30, 1997.

See also 981 F.2d 821.

Dane Smith, Asst. U.S. Atty., Eastern Dist., U.S. Dept. of Justice, Tyler, Constance Ann Wynn, PHV Wynn, U.S. Dept. of Justice, Civil Div., Washington, DC, for Appellants.

Maury Marlene Hexamer, Sherman, for Appellee.

Before OVARD, HANKINSON[1] and MOSELEY, JJ.

## OPINION

OVARD, Justice.

Appellants "Patrick Foreness, Director, Postal Data Center, and United States Postal Service"[2] (collectively, the "Postal Service") appeal a summary judgment granted to appellee Maury Hexamer on her action to enforce a Texas judgment awarding her current and pastdue child support, interest, court costs, and attorney's fees. We conclude federal law governs the dispositive issue of this protracted litigation and excuses the Postal Service from complying with a Texas child support garnishment order under the facts of this case. We reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Hexamer obtained a divorce from her former husband, Joseph Travis Tucker, Jr., in a Texas court in 1973. The divorce decree awarded Hexamer custody of the couple's minor child, Gavin Travis Tucker, and $200 monthly child support. At the time of the divorce, both Tucker and Gavin lived in Rhodesia. Tucker was never personally served with process in the divorce proceeding; in-

---

1. The Honorable Deborah G. Hankinson participated in this cause at the time it was submitted for decision. Due to the appointment of Justice Hankinson to the Texas Supreme Court on October 27, 1997, she did not participate in the issuance of this opinion.

2. The record names as appellants "Patrick Foreness, Director, Postal Data Center, and United States Postal Service, et al." We are unable to identify the party or parties referenced as "et al.," and we presume that "Patrick Foreness, Director, Postal Data Center" and the "United States Postal Service" are the two appellants bringing this appeal.

stead, Hexamer relied on substitute service by publication in an Austin, Texas newspaper. After living in Rhodesia for eleven years, Tucker and his son moved to Arizona where Tucker went to work for the Postal Service.[3] Thereafter, Hexamer, a licensed attorney serving as her own counsel, sought to collect the child support payments that had been awarded to her by the Texas divorce decree.

In 1987, she sued Tucker for past-due child support in a Texas district court. Tucker did not participate in this Texas litigation. The Texas court issued a Judgment for Unpaid Child Support & Order for Withholding of Income and an Employers Order to Withhold Earnings for Child Support (the "withholding order"). Hexamer served the withholding order on the Postal Service, Tucker's employer in Arizona.

Tucker responded by filing his own suit in an Arizona court for relief from the Texas child support judgment and the withholding order. The Arizona court found the Texas court lacked personal jurisdiction over Tucker to issue the original child support order. It issued an Order to Quash (the "quash order") quashing the underlying Texas child support orders and the wage withholding order previously served on the Postal Service.

When served with the Arizona quash order, the Postal Service refused to comply with the Texas withholding order. For several years, Hexamer attempted to enforce the Texas withholding order in federal courts. The Fifth Circuit Court of Appeals ultimately dismissed her federal lawsuit, ruling that the federal district court lacked subject-matter jurisdiction and that the case should be remanded to state court. *See Hexamer v. Foreness*, 981 F.2d 821 (5th Cir. 1993). Hexamer then filed this action against the Postal Service in a Texas state court seeking compliance with the Texas withholding order. The trial court granted summary judgment for Hexamer. This appeal followed.

## SUMMARY JUDGMENT

In two points of error, the Postal Service contends the trial court erred in granting summary judgment for Hexamer because: (1) the Postal Service was not required to comply with the Texas garnishment order under the federal Child Support Enforcement Act,[4] as amended, and its implementing regulations; and (2) the initial Texas child support order was void and unenforceable because the issuing court lacked personal jurisdiction over Tucker.

### 1. Standard of Review

This Court reviews a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *See American States Ins. Co. v. Arnold,* 930 S.W.2d 196, 200 (Tex.App.—Dallas 1996, writ denied); *Capitan Enters., Inc. v. Jackson,* 903 S.W.2d 772, 775 (Tex.App.—El Paso 1994, writ denied). An appellate court follows well-established procedures when reviewing a summary judgment. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### 2. Applicable Law

#### a. Preemption

Garnishment is a legal proceeding brought by a creditor (garnishor) against a third party (garnishee) to obtain the debtor's property held by the garnishee to satisfy the debt owed to the garnishor. *See Harris v. Balk,* 198 U.S. 215, 216, 25 S.Ct. 625, 625, 49 L.Ed. 1023 (1905). Garnishment is a creature of state law. *Id.* Garnishment proceedings may not be brought against the United States absent a waiver of its sovereign immunity. *Millard v. United States,* 916 F.2d 1, 3 (Fed.Cir.1990), *cert. denied,* 500 U.S. 916, 111 S.Ct. 2012, 114 L.Ed.2d 99 (1991). In 1974, Congress enacted legislation[5] that waived the federal government's sovereign immunity against garnishment proceedings for enforce-

---

**3.** Although the divorce court awarded Hexamer custody of Gavin and child support, the record reveals that Gavin never lived with Hexamer after his parents' divorce.

**4.** 42 U.S.C. §§ 651–669, 1305 (1991).

**5.** 42 U.S.C. § 659 (1991).

ment of court-ordered child support and alimony. *Id.*

⬛ Under the Supremacy Clause of the United States Constitution, a federal law preempts all inconsistent state legislation if the federal law conflicts with state law. U.S. CONST. art. IV, cl. 2. However, because domestic relations are generally matters of state law, Congress rarely enacts legislation that displaces state family law. *Mansell v. Mansell,* 490 U.S. 581, 587, 109 S.Ct. 2023, 2027–28, 104 L.Ed.2d 675 (1989). When a federal law conflicts with a state family law, review under the Supremacy Clause is limited to a determination of whether Congress has positively required by direct enactment that state family law is preempted. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979); *Buys v. Buys,* 924 S.W.2d 369, 373 (Tex.1996). The pertinent questions are whether the right asserted under state law conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require preemption of state law. *Hisquierdo,* 439 U.S. at 583, 99 S.Ct. at 809; *Buys,* 924 S.W.2d at 373. Regulations have the same preemptive effect as statutes. *Eli Lilly & Co. v. Marshall,* 850 S.W.2d 155, 158 (Tex.1993) (citing *Hillsborough County, Fla. v. Automated Medical Labs., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985)).

### b. Texas Family Code [6]

The Texas Family Code permits wages to be garnished for payment of an obligor's child support obligations in any proceeding brought under part D of title IV of the federal Social Security Act.[7] *See* Act of Sept. 3, 1986, 69th Leg., 2d C.S., ch. 10, § 7, 1986 Tex. Gen. Laws 15, 17, *repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282 (current version at TEX. FAM.CODE ANN. § 158.006 (Vernon 1996)); *State ex rel. Nelson v. Nelson,* 783 S.W.2d 635, 638 (Tex.App.—Houston [14th Dist.] 1989, writ denied). It provides procedures that the parties must follow in a garnishment suit to preserve their rights under the family code.

Specifically, an employee-debtor has ten days after receipt of notice of the garnishment action to file a motion to stay issuance of the writ of income withholding. Act of Sept. 2, 1986, 69th Leg., 2d C.S., ch. 10, § 8, 1986 Tex. Gen. Laws 15, 20–21, *repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282 (current version at TEX. FAM.CODE ANN. § 158.307 (Vernon 1996)). The timely filing of a motion to stay prohibits the clerk of the court from delivering the writ of income withholding to any employer of the employee-debtor pending a hearing on the motion. *Id.* (current version at TEX. FAM.CODE ANN. § 158.308 (Vernon 1996)). If the employee-debtor fails to timely file the motion to stay, the trial court loses jurisdiction to stop the garnishment. *Attorney Gen.'s Office ex rel. State v. Mitchell,* 819 S.W.2d 556, 558–60 (Tex.App.—Dallas 1991, no writ).

An employer-garnishee has twenty days after receipt of an order of income withholding to request a hearing on the applicability of the order to the employer. Act of Sept. 3, 1986, 69th Leg., 2d C.S., ch. 10, § 7, 1985 Tex. Gen. Laws 15, 19 (repealed 1995) (cur-

---

**6.** The Texas Family Code was recodified, effective April 20, 1995, during the pendency of this lawsuit. *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, 1995 Tex. Gen. Laws 113. Section 2(1) of the Act repealed title 2, as that title existed before the effective date of the Act. Section 1 added title 5, The Parent–Child Relationship and the Suit Affecting the Parent–Child Relationship, to the Code and reenacted title 2 as part of title 5. The change in law did not affect a proceeding under the Texas Family Code pending on April 20, 1995. Pending proceedings on the effective date of the Act were governed by the law in effect at the time the proceeding was commenced, and the former title 2 was continued in effect for that purpose. Hexamer's Original Petition is undated

in the transcript. Although "1–27–88" is handwritten at the bottom of the first page of Exhibit A, the Employers Order to Withhold Earnings for Child Support attached to the petition, we are unable to conclude with certainty that the original petition was filed on January 27, 1988. Consequently, unless otherwise noted, all subsequent references to the Texas Family Code will be to the law in effect on November 25, 1987, the date of the Employers Order to Withhold Earnings for Child Support that Hexamer seeks to enforce on appeal.

**7.** 42 U.S.C. §§ 651–669 (1991).

rent version at TEX. FAM.CODE ANN. § 158.205(a) (Vernon 1996)). After requesting a hearing, an employer-garnishee must continue to make payments to the creditor-garnishor pending further orders of the court. *Id.* (current version at TEX. FAM.CODE ANN. § 158.205(c) (Vernon 1996)).[8]

### c. 42 U.S.C. § 659

All agencies, subdivisions, and instrumentalities of the United States must comply in the same manner as a private employer with legal process brought for enforcement of an employee's legal obligation to provide child support. 42 U.S.C. § 659(a) (1991); *United States v. Morton,* 467 U.S. 822, 826, 104 S.Ct. 2769, 2771–72, 81 L.Ed.2d 680 (1984). Service of legal process may be accomplished by certified or registered mail, or by personal service, and shall be accompanied by sufficient data to permit prompt identification of the individual and moneys involved. 42 U.S.C. § 659(b) (1991).

Authority to promulgate regulations for implementing 42 U.S.C. § 659 within the executive branch of the United States government is vested in the President or his designee. 42 U.S.C. § 661(a) (1991). The President, by executive order, delegated authority to the Office of Personnel Management to promulgate implementing regulations. Exec. Order No. 12,105, 43 Fed.Reg. 59,465 (1973), *as amended by* Exec. Order No. 17107, 44 Fed.Reg. 1,055 (1979). In accordance with this delegation of authority, the Office of Personnel Management promulgated regulations for processing child support garnishment orders. 5 C.F.R. Ch. 1 (1–1–96 Ed.).

Upon proper service of legal process, a governmental entity must suspend payment of that portion of an employee's salary that will permit compliance with legal process of the employee's child support obligations. 5 C.F.R. § 581.301 (1–1–96 Ed.). The term "legal process" means any writ or order in the nature of garnishment for child support

obligations that is issued by a court of competent jurisdiction and is directed to a governmental entity holding moneys otherwise payable to an individual. 42 U.S.C. § 662(e) (1991); 5 C.F.R. § 581.102(f)(1)(i) (1–1–96 Ed.). A "court of competent jurisdiction" is one with subject-matter jurisdiction to issue the order. *Morton,* 467 U.S. at 828, 104 S.Ct. at 2772–73. "Legal process" does not require the issuing court to have personal jurisdiction over the defendant's person. *Id.* at 829, 104 S.Ct. at 2773–74. A governmental entity receiving a garnishment order pursuant to section 659 may not inquire into the issuing court's jurisdiction over the debtor. 5 C.F.R. § 581.305(g) (1–1–96 Ed.); *Morton,* 467 U.S. at 829, 104 S.Ct. at 2773–74. However, a governmental entity may not comply with legal process when it is also served with an order of a court of competent jurisdiction enjoining or suspending the operation of legal process. 5 C.F.R. § 581.305(a)(5) (1–1–96 Ed.); *see Morton,* 467 U.S. at 833 n. 19, 104 S.Ct. at 2775–76 n. 19.

### 3. Application of Law to Facts

■ The Postal Service argues the trial court erred in granting summary judgment for Hexamer because federal regulation 5 C.F.R. § 581.305(a)(5) prevents it from complying with the Texas withholding order issued pursuant to the Texas Family Code. Although neither party framed the issue as a question of preemption, we conclude the determination of whether federal or state law applies disposes of this appeal.

Federal regulation 5 C.F.R. § 581.305(a)(5) requires a governmental entity to suspend garnishment when served with conflicting court orders. Section 14.43(j) of the Texas Family Code requires an employer-garnishee to comply with a garnishment order pending resolution of a challenge to the order's validity. Section 14.43(j)'s continuing garnishment terms conflict with the express terms of 5

---

8. Before the recodification of the Texas Family Code, section 158.205(c) was contained within section 14.43(j). We note only one word was changed in the statute as recodified. Section 14.43(j) provided that *"the* order or writ remains binding and payments shall continue to be made

pending further order of the court." (Emphasis added.) Section 158.205(c) provides that *"an* order or writ remains binding and payments shall continue to be made pending further order of the court." (Emphasis added.)

C.F.R. § 581.305(a)(5) suspending garnishment.

Congress intended that 42 U.S.C. § 659 and its implementing regulations would facilitate the speedy enforcement of garnishment orders and minimize the burden on the government to administer the garnishment of an employee's wages. *Morton,* 467 U.S. at 836, 104 S.Ct. at 2777. The implementing regulations achieve these dual goals by simply requiring governmental entities to comply with legal process that appears regular on its face. The regulations do not permit examination of the garnishment order itself.

The regulations also envision a situation where a debtor-employee challenges the validity of a garnishment order, as Tucker has done in this case. In situations like these, when the governmental entity is served with conflicting court orders, 5 C.F.R. § 581.305(a)(5) further minimizes the burden of the governmental entity to administer the garnishment of wages. It directs that no wages are to be withheld. In so doing, it places the burden on the creditor-garnishor and the debtor-employee to resolve the issues that resulted in conflicting court orders. It promotes speedy resolution by providing the creditor-garnishor with an incentive to resolve those issues. And, it minimizes the governmental entity's administrative burden by removing it from an unresolved domestic relations conflict. Because the requirement of section 14.43(j) that an employer-garnishee continue to garnish wages pending a resolution of conflicting court orders conflicts with 5 C.F.R. § 581.305(a)(5) and impairs the objectives of 42 U.S.C. § 659 and its implementing regulations, we conclude federal regulation 5 C.F.R. § 581.305(a)(5) preempts section 14.43(j) of the Texas Family Code in this appeal.[9]

In 1993, Hexamer moved for summary judgment. She asserted the Fifth Circuit had ruled her action could "go forward in state court pursuant to 42 U.S.C. Section 659, which provides that wages paid by the United States are subject to garnishment for child support . . . payments in the same manner as payments made [by] private employers." She also asserted that the Postal Service had failed to comply with section 14.43(j) of the Texas Family Code requiring employers to file a motion to stay a wage withholding order within twenty days of service in order to challenge it. Hexamer argued that the Postal Service was collaterally attacking the garnishment order based on the same lack of personal jurisdiction issue that the Supreme Court had examined, and rejected, in *Morton.*

The Postal Service responded that Hexamer was not entitled to summary judgment because it had acted with regard to the rights of Hexamer and in accordance with the law. It argued that 5 C.F.R. § 581.305(a)(5) prohibited the Postal Service from complying with the Texas withholding order once the Postal Service had been served with an order of a court of competent jurisdiction enjoining or suspending the operation of the garnishment process. But, it did not additionally move for summary judgment on this ground. It attached the Arizona quash order as summary judgment evidence. The trial court found the Postal Service's response to have merit and denied Hexamer's first motion for summary judgment.

Following the trial court's denial of Hexamer's first summary judgment motion, the Postal Service moved for summary judgment on two jurisdictional grounds. It asserted that the 1973 child support orders underlying the garnishment action were void because the Texas divorce court lacked personal jurisdiction over Tucker. It also asserted the Texas court issuing the 1987 wage withholding order never acquired personal jurisdiction over Tucker. The Postal Service attached Hexamer's Motion to Reduce Unpaid Child Support to Judgment, the Texas Judgment for Unpaid Child Support & Order for Withholding of Income, and the Texas Employers Order to Withhold Earnings for Child Support as summary judgment evidence.

---

**9.** Although our determination that former section 14.43(j) is preempted by 5 C.F.R. § 581.305(a)(5) applies only to that version of the Texas Family Code in effect on November 25, 1987, we again note that the current version of section 14.43(j) contained at section 158.205(a) contains language that is almost identical to the language of former section 14.43(j).

Hexamer filed a response and amended motion for summary judgment. She argued that the Postal Service had been served with a final Texas withholding order and that both *Morton* and section 14.43 of the Texas Family Code prohibited the Postal Service from collaterally attacking the orders underlying the withholding order. She contended the Postal Service's jurisdictional arguments were frivolous. She also asserted the trial court lacked jurisdiction to entertain the Postal Service's collateral attack on the garnishment order because Tucker did not contest it within thirty days as required by section 14.44 of the Texas Family Code and by *Mitchell.* Hexamer sought child support payments accruing since January 1988, prejudgment interest, costs, and the reasonable value of her pro se attorney services for enforcement of the Employers Order.

The Grayson County trial court granted summary judgment for Hexamer. It awarded her $21,400 in payments that the Postal Service should have withheld from Tucker's salary from January 1988 through August 1993, interest, and $34,287.50 in attorney's fees.

We review all evidence accompanying the summary judgment motions in determining whether the trial court properly granted either party's motion. *Dallas County Appraisal Dist. v. Institute for Aerobics Research,* 766 S.W.2d 318, 319 (Tex.App.—Dallas 1989, writ denied). Both the Texas withholding order and the Arizona quash order were before the trial court as summary judgment evidence. The Texas order directed the Postal Service to garnish Tucker's wages; the Arizona order directed that no sums be withheld.

On appeal, Hexamer asserts a collateral attack on the jurisdiction of the court issuing the Arizona quash order. She contends there is no "plausible basis" for the Postal Service's suggestion that the Arizona court is a court with jurisdiction competent to issue an order suspending the operation of the Texas withholding order.[10] A "court of competent jurisdiction" is one with subject-matter jurisdiction to issue the order. *Morton,* 467 U.S. at 828, 104 S.Ct. at 2773. Whether a court has subject-matter jurisdiction is a question of law. *Dorchester Master Ltd. Partnership v. Dorchester Hugoton, Ltd.,* 914 S.W.2d 696, 703 (Tex.App.—Corpus Christi 1996, writ granted w.r.m.); *North Alamo Water Supply Corp. v. Texas Dep't of Health,* 839 S.W.2d 455, 457 (Tex.App.—Austin 1992, writ denied). Hexamer's brief provides no argument, authority, or record citations for this challenge to the court's subject-matter jurisdiction.

The quash order on its face does not recite the basis of the Arizona court's jurisdiction.[11] It was issued by the Superior Court of the State of Arizona, in and for the County of Maricopa, and signed by the Honorable Morris Rozar, Judge of the Superior Court. It appears on its face to be valid, final, and issued by a court of general jurisdiction. *See Escalona v. Combs,* 712 S.W.2d 822, 824 (Tex.App.—Houston [1st Dist.] 1986, no writ). When recitations in a judgment are insufficient to affirmatively show the court's jurisdiction, a presumption in favor of jurisdiction prevails so long as the recitations do not affirmatively show a lack of jurisdiction. *Huffstutlar v. Koons,* 789 S.W.2d 707, 710 (Tex.App.—Dallas 1990, no writ). Extrinsic evidence may not be used to establish a lack of jurisdiction when a judgment is

10. Hexamer does not argue that the Arizona quash order was invalid because the issuing court lacked personal jurisdiction over her or that there was improper service of the parties. In her only argument on appeal concerning the personal jurisdiction of the Arizona court, she asserts the Postal Service submitted no evidence that it was " 'served' with process in any Arizona proceeding to which [it was a party]." We note from the record that the Postal Service appears to have voluntarily complied with the Arizona court's assertion of personal jurisdiction over it, so we presume the Postal Service received service of legal process or waived any defect in service of process.

11. Although Tucker's "Motion for Quash Order" attached as an exhibit to "Defendant's Reply to Plaintiff's Response to Defendant's Response to Motion for Summary Judgment" and to "Defendant's and Third–Party Plaintiffs' Third Party Complaint" recites the statutory basis of the superior court's authority, pleadings are not summary judgment evidence. *See Brooks v. Sherry Lane Nat'l Bank,* 788 S.W.2d 874, 878 (Tex. App.—Dallas 1990, no writ).

attacked collaterally. *Id.* Hexamer, therefore, has the burden of showing from the four corners of the judgment that the superior court of Maricopa County, Arizona did not have the subject-matter jurisdiction to issue an order quashing enforcement of the Texas withholding order within the geographical boundaries of the State of Arizona.

Hexamer has failed to demonstrate that the Arizona superior court lacked subject-matter jurisdiction of the quash order. Indeed, Hexamer never challenged, by written motion, answer, or response, the subject-matter jurisdiction of the Arizona court during the summary judgment proceedings. The nonmovant must expressly present to the trial court in a written answer or response to a summary judgment motion those issues that would defeat the movant's right to summary judgment and, failing to do so, may not later assign them as appellate error. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). Therefore, we must presume the superior court of Maricopa County, Arizona had authority to quash enforcement of the Texas withholding order in Arizona.

We have previously determined 5 C.F.R. § 581.305(a)(5) preempts section 14.43(j) of the Texas Family Code in effect at the time the withholding order was issued. Under 5 C.F.R. § 581.305(a)(5), the Postal Service could not comply with the Texas withholding order, not because of an alleged jurisdictional defect, but because it lost statutory authority to do so once it received the conflicting Arizona quash order. Both the Texas withholding order and the Arizona quash order were before the court as summary judgment evidence. Preemption occurred under 5 C.F.R. § 581.305(a)(5) as a matter of law. The trial court erred in granting summary judgment for Hexamer. We sustain the Postal Service's first point of error.

Because of our disposition of the Postal Service's first point of error, we need not review its second point of error that the initial Texas child support order was void and unenforceable because the issuing court lacked personal jurisdiction over Tucker. *See* TEX.R.APP. P. 47.1.

When both sides move for summary judgment and the trial court grants one motion and denies the other, we may render the judgment the trial court should have rendered. *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993). However, the Postal Service never moved for summary judgment based on its defense under 5 C.F.R. § 581.305(a)(5). Because the Postal Service did not move for summary judgment on this ground, we are unable to render judgment on the Postal Service's first point of error. We must reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

## ATTORNEY'S FEES

In its third point of error, the Postal Service complains the trial court erred in awarding Hexamer $34,287.50 in attorney's fees because: (1) the trial court lacked jurisdiction to make a fee award under Texas Rule of Civil Procedure 329(b); (2) Hexamer is a pro-se litigant; and (3) Hexamer failed to document her time adequately. An employer who does not comply with a garnishment order under the Texas Family Code is liable to the obligee for attorney's fees and court costs in addition to the amount not paid in compliance with the order. Act of Sept. 3, 1986, 69th Leg., 2d C.S., ch. 10, § 7, 1985 Tex. Gen. Laws 15, 19, *repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1985 Tex. Gen. Laws 113, 282 (current version at TEX. FAM.CODE ANN. § 158.206(b)(3) (Vernon 1996)). Because we conclude the trial court erred in finding the Postal Service was required to comply with the garnishment order and in granting summary judgment for Hexamer, we likewise conclude the trial court erred in awarding Hexamer attorney's fees. We sustain the Postal Service's third point of error.

## MOTION FOR SANCTIONS
## UNDER RULE 84

We construe Hexamer's "motion for sanctions under rule 84" to be a cross-point of error wherein Hexamer requests this Court to impose sanctions on the Postal Service under Texas Rule of Appellate Procedure 84. *See* TEX.R.APP. P. 84 (former rules). Rule 84

authorized an award to a prevailing appellee of up to ten percent of the damages where an appeal is taken for delay and without sufficient cause. TEX.R.APP. P. 84 (former rules); *Attorney Gen. of Tex. ex rel. State v. Cartwright*, 874 S.W.2d 210, 220 (Tex.App.—Houston [14th Dist.] 1994, writ denied). We have previously sustained the Postal Service's first point of error. We overrule Hexamer's cross-point of error.

We reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.